IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROLYN M. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-381-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Carolyn M. White requests judicial review of the Social Security Administration Commissioner's denial of benefits pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§

404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*

*Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 4, 1965, and was forty-four years old at the time

of the administrative hearing.  She has past relevant work as a store clerk.  (Tr. 21). The

claimant alleges that she has been unable to work since December 1, 1991 because of

problems with her kidney, lung disease, knee replacement and dyslexia.  (Tr. 140).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under

Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 8, 2007.  The

Commissioner denied her applications.  ALJ Deborah L. Rose held an administrative

hearing, at which the claimant amended her onset date to June 8, 2007 and withdrew her

claim for disability insurance benefits under Title II.  ALJ Rose then determined that the

claimant was not disabled in a written opinion dated April 1, 2010.  The Appeals Council

denied review, so the ALJ's written opinion is the Commissioner's final decision for

purposes of appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation.  She found

that the claimant had the residual functional capacity ("RFC") to lift/carry ten pounds

frequently and twenty pounds occasionally, stand/walk/sit for six hours in an eight-hour

work day, and stoop, crouch, crawl, and kneel occasionally, but never climb ladders, ropes and scaffolds, and work only in clean air environments.  (Tr. 17).  Based on testimony from a vocational expert at the administrative hearing, the ALJ concluded that the claimant was capable of performing her past relevant work as a store clerk and was therefore not disabled.  (Tr. 21).

## Review

The claimant contends that the ALJ erred: (i) by failing to consider all of the her impairments, both severe and non-severe, in determining her RFC at step four; (ii) by failing to properly analyze medical evidence, *i. e.*, picking and choosing among the medical evidence to find support for a finding of non-disability; and (iii) by failing to properly analyze her credibility.   The Court finds merit in these contentions.

On April 26, 2004, the claimant had knee surgery to repair a complete tear in her anterior cruciate ligament.  (Tr. 526).  Following her surgery, the claimant followed up with Dr. Patrick R. Gannon, M.D. who wrote that the claimant was still experiencing "marked discomfort and feelings of instability in the knee with buckling-type sensations present."  (Tr. 526).  Because she lacked health insurance, the claimant was unable to participate in formal physiotherapy and the pain she felt in her knee prevented her from rehabilitating herself at home.  (Tr. 526).  The claimant reported that mere light touching on her knee caused discomfort and that "marked quadriceps atrophy [was] producing giving-way as well as some modest anterior synovitis and a possible neuroma."   (Tr.

526).  In addition, Dr. Gannon wrote that claimant had "developed a reflex sympathetic dystrophy-type picture" and "well established" chronic pain syndrome.  (Tr. 526).

Upon referral from her physician Dr. Emilee Wood, D.O., the claimant saw Dr. Therron S. Nichols, D.O. for an evaluation of her right knee.  (Tr. 547).  Dr. Nichols noted that claimant was not taking medication for her knee, but that she also noted that she has no medical insurance and was unable to participate in postoperative physical therapy.  (Tr. 547).  Dr. Nichols stated that the claimant's radiograph revealed "severe degenerative changes, [and] there is some cyst formation under the medial tibia plateau[.]"  (Tr. 548).  Dr. Nichols concluded that he had advised claimant that she should "continue conservative management as long as she can proceed, which I don't think is going to be much longer" and that claimant was "looking at a total knee replacement."  (Tr. 549).

The claimant was also evaluated by state examining physician Dr. Ronald Schatzman, M.D. on September 26, 2007.  The claimant reported at that time that she experienced pain in her knee after prolonged standing and walking and walked with a slight limp at the exam.  (Tr. 359).  Dr. Schatzman's objective findings reflect that the claimant had normal range of motion in her joints, but noted pain in her lumbosacral spine.  (Tr. 363).  Dr. Schatzman's exam had inconsistent findings regarding heel-toe walking, with his narrative stating that claimant's heel/toe walking was normal, but the results sheet reflecting *weak* heel/toe walking.  (Tr. 363).

At the outset, it should be noted that the ALJ committed error by failing to re-contact Dr. Schatzman regarding the inconsistency in his opinion as to the claimant's ability to walk heel to toe.  This was a significant omission given the ALJ's finding that the claimant had the RFC to walk for six hours in an eight-hour workday.  *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

Further, although deference must be given to an ALJ's credibility determination unless she misread the medical evidence taken as a whole, *see, e. g., Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991), and an ALJ may disregard subjective complaints of pain if unsupported by any clinical findings, *see, e. g., Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987), credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Thus, a credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.  The ALJ here discredited the claimant's testimony regarding pain in her knee because: (i) no treating physician had placed any limitations on her ability to work

or opined she was disabled; (ii) she had not "received the type of medical treatment one would expect for a totally disabled individual[;]" (iii) she did not take medication for her knee pain; and (iv) her activities of daily living were objectively verifiable.  But the ALJ failed to consider a number of important factors relevant to the claimant's credibility regarding her knee pain.

First, if any treating physician *had* opined that the claimant could not work or was disabled, the ALJ would in all likelihood have criticized such an opinion as encroaching on her own discretion under the applicable social security regulations.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating that opinions that the claimant is "disabled" or "unable to work" are not medical opinions).  Second, the ALJ apparently ignored regulations prohibiting the rejection testimony as to pain solely because medical evidence does not support it.  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.").  Third, the ALJ failed to consider medical evidence that actually *does* support the claimant's complaints of pain, *e. g.*, Dr. Nichols noted in February 2010 that the claimant exhibited "severe degenerative changes" in her knee, and that she should be treated conservatively at the present time, this could not be done for very long and that the claimant would eventually require a total knee replacement.  (Tr. 548-49).  Fourth, the ALJ faulted the claimant for failing to take medication for her knee pain, but the record reveals that the claimant *was*

prescribed medication for her knee pain but was arrested in 2007 for purchasing Lortab without a prescription, which the claimant testified was a means of self-medicating to relieve the pain she was experiencing.  (Tr. 44).  Further, the record reflects the claimant was likely not taking pain medication on a regular basis because the drug court program in which she was involved prohibited her from taking narcotics unless prescribed in a *life-threatening* condition (Tr. 425).  Given the importance the ALJ attributed to the claimant's lack of medication in spite of her complaints of pain, the ALJ should have at least attempted to develop the record on this issue.  *See Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993) (finding that the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Finally, the ALJ failed to consider other probative evidence relating to claimant's credibility: at the time of her application, the social security interviewer noted that the claimant had difficulty reading, breathing, concentrating, *sitting, standing, walking* and seeing and noted that the claimant "moved around constantly" (Tr. 137).  While an ALJ is not required to discuss all of the medical evidence in the record, he is still not entitled to ignore probative evidence which does not support his decision.  *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted].

Because the ALJ failed to resolve the inconsistency in Dr. Schatzman's findings, and to properly analyze the claimant's credibility, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED, and the case is REMANDED, for further proceedings consistent herewith.

**DATED** this 29th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma